**Barbara MORRIS and Romie Morris, Plaintiffs,**

v.

**SIEMENS COMPONENTS, INC., Microwave Semiconductor Corp., and John Doe, Defendants.**

Civil Action No. 95–5242.

United States District Court, D. New Jersey.

May 31, 1996.

Linda D. Costabile, Law Office of A. Kenneth Weiner, East Brunswick, New Jersey, for Plaintiff, Barbara Morris.

Alan G. Lesnewich, David H. Ganz, Collier, Jacob & Mills, A Professional Corporation, Somerset, New Jersey, for Defendant, Siemens MC, Inc., incorrectly identified in the Complaint as Microwave Semiconductor Corp.

## OPINION

ORLOFSKY, District Judge:

This matter comes before the Court on the motion of Defendant, Microwave Semiconductor Corp. ("MSC"),[1] for summary judgment pursuant to Fed.R.Civ.P. 56. The issue presented to the Court by Defendant's motion is whether MSC's termination of Plaintiff's employment was in violation of either the statutory or common law of New Jersey.

In a narrower context, this case presents an issue of first impression in this District, one yet to be resolved by the Third Circuit: whether an employee who alleges that her discharge from employment at the conclusion of a ninety-day medical leave, the maximum period of medical leave allowed by her employer's medical leave of absence policy, is judicially estopped from contending that her termination was in violation of the New Jersey Law Against Discrimination, N.J.S.A. §§ 10:5–1, *et seq.*, when at the time of her discharge she filed applications for short and long-term disability benefits stating that she was totally disabled and could not work? For the reasons which follow, this Court concludes that Plaintiff's New Jersey Law Against Discrimination claim is barred by the doctrine of judicial estoppel.

---

**1.** Although in or about October, 1989, MSC changed its name to Siemens MC, Inc., the Court will use the term MSC throughout this Opinion for the sake of clarity.

## I. *Procedural Background*

Plaintiffs, Barbara and Romie Morris, filed the complaint in this action on July 3, 1995, in the Superior Court of New Jersey, Law Division, Middlesex County. By Notice of Removal, filed by Defendants in this Court on October 18, 1995, the action was removed to this Court. This Court's subject matter jurisdiction is based upon diversity of citizenship and alleged damages in excess of fifty thousand dollars, exclusive of interest and costs. *See* 28 U.S.C. § 1332.

This action arises out of MSC's termination of Barbara Morris's employment on or about July 5, 1989. The complaint advances several theories upon which Ms. Morris relies in contending that her termination was violative of both New Jersey statutory and common law.

In the First Count of the complaint, Plaintiff, Barbara Morris ("Plaintiff" or "Morris"), alleges that her employment was wrongfully terminated by the Defendants in response to her attempt to obtain benefits under the Workers' Compensation Act of the State of New Jersey. (Complaint, First Count ¶ 7). In the Second Count, Plaintiff contends that her employment was wrongfully terminated by the Defendants in violation of public policy. (Complaint, Second Count ¶ 2). Plaintiff claims in the Third Count that the Defendants unlawfully discriminated against her in violation of the New Jersey Law Against Discrimination, N.J.S.A. §§ 10:5–1, *et seq.* (Complaint, Third Count ¶ 2).

Plaintiff also alleges that the termination of her employment was in violation of both oral and implied contracts of employment between the Defendants and her. (Complaint, Fourth Count ¶ 2, Fifth Count ¶ 2). In the Sixth Count, Plaintiff alleges that she has suffered damages as a result of the Defendants' negligent and intentional infliction of emotional distress. (Complaint, Sixth Count ¶ 2).

Finally, in the Seventh Count, Romie Morris, Plaintiff's husband, seeks damages due to the alleged loss of services of his wife. (Complaint, Seventh Count ¶ 2). By Consent Order, filed on December 29, 1995, the Seventh Count of the complaint was dismissed without prejudice, and Plaintiff, Romie Morris, and Defendant, Siemens Components, Inc., were dismissed from this action without prejudice. On April 30, 1996, Defendant moved for summary judgment on the six remaining counts of Plaintiff's complaint.

## II. *Facts*

The material facts of this case are largely uncontested. In March, 1982, Morris began working for MSC as a computer mounter at MSC's manufacturing plant. (Plaintiff's Answers to Defendants' First Set of Interrogatories ("Plaintiff's Answers"), attached to Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment ("Plaintiff's Mem.") as Exhibit A). Approximately seven years later, on or about April 4, 1989, Plaintiff was injured while at work. She developed cramps in her right leg and lower back, causing her severe pain. (Report and Investigation of Injury and Illness, attached to Plaintiff's Mem. as Exhibit B).

On May 1, 1989, Plaintiff requested from MSC a medical leave of absence by preparing and signing a "Request for Medical Leave of Absence" form. On this form, Plaintiff requested that her medical leave of absence begin on April 5, 1989, and continue for an undetermined period of time. (Request for Medical Leave of Absence, attached to Defendant's Memorandum of Law in Support of its Motion for Summary Judgment ("Defendant's Mem.") as Exhibit A). The form, itself, indicated that a medical leave of absence was not to exceed a period of three months. *Id.*[2]

In addition, by letter dated April 19, 1989, Plaintiff was advised by MSC that "[l]eaves will not extend beyond a three (3) month period." (Certification of David H. Ganz in Support of Defendant's Motion for Summary

---

**2.** MSC's Leave of Absence Policy in effect at the time that Plaintiff took her medical leave of absence is further evidenced by a MSC Memorandum, dated March 31, 1987, indicating that "[m]edical leaves will have a maximum duration of three (3) months." This memorandum notes that the policies listed are to replace the Leave of Absence Policy currently in the MSC Personnel Policies Manual. (Revised Leave of Absence Policy, attached to Plaintiff's Mem. as Exhibit L).

Judgment ("Ganz Cert."), Exhibit G). Plaintiff was further notified by MSC in letters dated, June 14, June 28, and July 5, 1989, respectively, that her medical leave was not to exceed ninety days, and that she would be removed from the payroll on July 5, 1989, if she did not return to work before that date. (Ganz Cert., Exhibits E, F, D). Plaintiff was also notified by telephone on or about June 29, 1989, by MSC's Personnel Director, Joanne Louizides, that MSC policy would not allow an exception to the ninety day maximum limit for medical leaves of absence, and that she must return to work at the end of her ninety day medical leave of absence, or be terminated. Plaintiff did not return to work on July 5, 1989, and was, in fact, terminated by MSC and removed from the payroll on or about July 5, 1989. (Ganz Cert., Exhibit D).

As a result of her injury, Plaintiff applied for short-term disability benefits with the State of New Jersey on May 1, 1989. In her application for short-term benefits, Plaintiff certified that she became disabled on or about April 5, 1989, that she had been unable to work since April 6, 1989, and that she had not recovered as of May 1, 1989. (Ganz Cert., Exhibit 2). In support of her claim for short-term disability benefits, Plaintiff submitted a medical certificate which had been prepared and signed by Dr. Harvey Bacon on May 1, 1989. In this certificate, Dr. Bacon certified that Plaintiff had been unable to perform all the duties of her regular job since April 5, 1989, and that he was unable to determine when she would be able to return to work. (Ganz Cert., Exhibit 2).

In May, 1989, Plaintiff also applied for workers' compensation benefits with the Zurich–American Insurance Group ("Zurich"), a third party insurance company that processed MSC's employees' claims for workers' compensation benefits. By letter dated June 2, 1989, however, Zurich advised Plaintiff "that [her claim was] non-compensable under the terms of the New Jersey Worker's [sic] Compensation Act." (Ganz Cert., Exhibit 4).

Shortly thereafter, Plaintiff filed a petition for workers' compensation benefits with the State of New Jersey Division of Workers' Compensation on June 19, 1989. (Ganz Cert., Exhibit 5; Plaintiff's Mem., Exhibit H). The State of New Jersey Division of Workers' Compensation ruled in favor of Plaintiff on her petition and granted her workers' compensation benefits. (Ganz Cert., Exhibit 6).

In addition to short-term disability and workers' compensation benefits, Plaintiff also applied for long-term disability benefits with MSC's long-term disability carrier on July 26, 1989. In her application, Plaintiff certified that her accident or illness was unrelated to her occupation at MSC and that she had been unable to work because of her disability since April 6, 1989. (Ganz Cert., Exhibit B). In support of her application for long-term disability benefits, Plaintiff submitted to the insurance carrier an "Attending Physician's Statement," prepared by Dr. Laurence Rubenstein, which indicated that as of August 17, 1989, Plaintiff was totally disabled for her occupation or for any other work. (Ganz Cert., Exhibit C).

Plaintiff's application for long-term disability benefits was approved, and she began receiving such benefits retroactive to July 5, 1989. Between July 5, 1989 and May 2, 1992, Plaintiff received a total of over $40,000 in long-term disability benefits. (Ganz Cert., Exhibits 3, 7, 8).

### III. *Summary Judgment Standard*

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that [he or she] is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). *See also Hersh v. Allen Products Co.*, 789 F.2d 230, 232 (3d Cir.1986); *Lang v. New York Life Ins. Co.*, 721 F.2d 118, 119 (3d Cir.1983). In deciding whether there is a disputed issue of material fact the Court must view all inferences, doubts and issues of credibility in favor of the non-moving party. *See Hancock Indus. v. Schaeffer*, 811 F.2d 225, 231 (3d Cir.1987) (citation omitted); *Meyer v. Riegel Prods. Corp.*, 720 F.2d 303, 307 n. 2 (3d Cir.1983), *cert. denied*, 465 U.S. 1091, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably

be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

Moreover, Federal Rule of Civil Procedure 56(e) provides:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e).

■■■ Under this rule, a defendant must be awarded summary judgment on all properly supported issues identified in its motion, except for those for which a plaintiff has provided evidence to show that a question of material fact remains. Put another way, once the moving party has properly supported its motion, "its opponent must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). A summary judgment movant may meet its burden by showing that the opposing party is unable to meet its burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986) Nonetheless, defendant, as the moving party on the motion, bears the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Id.*

## IV. *Discussion*

The issue presently before this Court is whether MSC's termination of Plaintiff's employment was in violation of either New Jersey common law or statutory law. Plaintiff's complaint sets forth six counts, each of which will be considered in turn to determine whether each claim can withstand Defendant's motion for summary judgment. Because the Court finds that the undisputed material facts contained in the summary judgment record indicate that MSC's termination of Plaintiff's employment was not in violation of either the common or statutory law of New Jersey, Defendant's motion for summary judgment will be granted.

### A. *First Count*

In the First Count of Plaintiff's complaint, Plaintiff alleges that she was discharged in retaliation for seeking to obtain workers' compensation benefits. Complaint, First Count ¶ 7. Plaintiff further claims to have suffered damages as a result of this alleged retaliatory discharge. *Id.* ¶¶ 8, 9.

New Jersey recognizes a common law claim for retaliatory discharge when an employee is discharged contrary to a clear mandate of public policy. *Pierce v. Ortho Pharmaceutical Corp.*, 84 N.J. 58, 417 A.2d 505 (1980). Moreover, the discharge of an employee in retaliation for filing a workers' compensation claim has been found to fall within a "*Pierce*-type" claim. *See Lally v. Copygraphics*, 173 N.J.Super. 162, 413 A.2d 960 (App.Div.1980), *aff'd*, 85 N.J. 668, 428 A.2d 1317 (1981). *See also Galante v. Sandoz, Inc.*, 192 N.J.Super. 403, 407, 470 A.2d 45 (Law Div.1983), *aff'd*, 196 N.J.Super. 568, 483 A.2d 829 (App.Div.1984).

In so holding, the New Jersey Supreme Court stated in *Lally* that:

> we endorse the conclusion of the Appellate Division that there exists a common law cause of action for civil redress for a retaliatory firing that is specifically declared unlawful under N.J.S.A. §§ 34:15–39.1 and 39.2. The statutory declaration of the illegality of such a discharge underscores its wrongful and tortious character for which redress should be available. Such a cause of action is strongly founded in public policy which, in this case, is reflected in the statutory prohibitions themselves.

*Id.* at 670, 428 A.2d 1317.[3]

■ In analyzing a retaliatory discharge claim under New Jersey law, courts look to correlative federal law to supply the burden shifting framework and relevant standards for evaluating the claim. *See Abrams v. Lightolier Inc.*, 50 F.3d 1204, 1212 (3d Cir. 1995). In a retaliatory discharge claim brought under Title VII, the law places the initial burden of production on the plaintiff to establish a *prima facie* case of retaliatory discharge. Once the plaintiff has established a *prima facie* case, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the discharge. Ultimately, the plaintiff must show that the defendant's proffered reasons for the discharge are not worthy of belief and that the defendant acted with the intent to retaliate unlawfully. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802–04, 93 S.Ct. 1817, 1824–25, 36 L.Ed.2d 668 (1973); *Charlton v. Paramus Bd. of Educ.*, 25 F.3d 194, 200–02 (3d Cir.), *cert. denied*, — U.S. —, 115 S.Ct. 590, 130 L.Ed.2d 503 (1994).

■ A defendant is entitled to summary judgment on a plaintiff's claim for retaliatory discharge if it can demonstrate that: (1) the plaintiff is unable to establish a *prima facie* case of retaliatory discharge; or (2) if plaintiff can establish a *prima facie* case, the plaintiff cannot produce sufficient evidence of pretext to rebut the defendant's asserted legitimate reason for discharge. *See Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir.1994); *Jalil v. Avdel Corp.*, 873 F.2d 701, 706–07 (3d Cir.1989). In this case, MSC is entitled to summary judgment on Plaintiff's retaliatory discharge claim for both of the above reasons.

■ In order to establish a *prima facie* case for retaliatory discharge, the employee must prove that: (1) he or she attempted to make a claim for workers' compensation benefits; and (2) he or she was discharged for making that claim. *Lally*, 85 N.J. 668, 428 A.2d 1317. MSC does not dispute that Plaintiff can establish the first element of a retaliatory discharge claim— that she made or attempted to make a claim for workers' compensation benefits. MSC contends, however, that Plaintiff's retaliatory discharge claim must fail as a matter of law since Plaintiff is unable to establish that she was discharged for making the claim for workers' compensation benefits.

■ The undisputed facts presented to the Court reveal that Plaintiff was, in fact, discharged by MSC shortly after she submitted a claim for workers' compensation benefits. Although the timing of a discharge may be significant, it, alone, cannot raise an inference of causation sufficient to establish a *prima facie* case of retaliation. *Quiroga v. Hasbro, Inc.*, 934 F.2d 497, 501 (3d Cir.) (finding that plaintiff could not establish the requisite causation in a retaliatory discharge suit under Title VII merely by demonstrating that the discharge occurred shortly after the protected activity), *cert. denied*, 502 U.S. 940, 112 S.Ct. 376, 116 L.Ed.2d 327 (1991).[4]

■ In fact, "[w]ithout any specific evidence showing [a] plaintiff's discharge was in retaliation for his having filed for workers' compensation benefits, [a] defendant's motion for summary judgment must be granted."

---

**3.** N.J.S.A. § 34:15–39.1 states that:

It shall be unlawful for any employer or his duly authorized agent to discharge or in any manner discriminate against an employee as to his employment because such employee has claimed or attempted to claim workman's compensation benefits from such employer.

Note that although this section does not provide an aggrieved employee with a private *statutory* action in a trial court, quasi-judicial proceedings before the New Jersey Commissioner of Labor and Industry are available. In such a proceeding, the Commissioner may award compensatory relief, as well as impose a civil penalty in an amount not to exceed $1000. *See* N.J.S.A.

§ 34:15–39.2; *Lally v. Copygraphics*, 173 N.J.Super. 162, 176–177, 413 A.2d 960 (App.Div.1980), *aff'd*, 85 N.J. 668, 428 A.2d 1317 (1981).

**4.** The *prima facie* case for establishing a retaliatory discharge claim under Title VII is very similar to that required to prove a New Jersey common law retaliatory discharge claim. *See, e.g., Jalil v. Avdel*, 873 F.2d 701, 708 (3d Cir.1989) (holding that in order to establish a *prima facie* case of retaliatory discharge under Title VII, a plaintiff must show: (1) that he or she engaged in a protected activity; (2) that he or she was discharged after the activity; and (3) that there was a causal link between the protected activity and the adverse employment decision).

*Mallon v. Prudential Property & Cas. Ins. Co.*, 688 F.Supp. 997, 1011 (D.N.J.1988). In *Mallon*, the plaintiff alleged that his discharge from employment was in retaliation for his filing a workers' compensation claim, and therefore in violation of the public policy of New Jersey. Although the plaintiff was able to establish the first prong of his *prima facie* case, that he filed a claim for workers' compensation benefits, he could not establish the second prong, that he was discharged for making that claim. The Court found that, other than the statements from the plaintiff that the defendant had acknowledged his disorder was work-related, plaintiff had set forth "no evidence in the record that defendant was retaliating for plaintiff's having filed a workers' compensation claim." *Id.* *See also Oare v. Midlantic Nat'l Bank/Merchants*, 1990 WL 4622 (D.N.J. January 16, 1990) (court granted summary judgment in favor of defendant on plaintiff's retaliatory discharge claim because, although plaintiff had filed a workers' compensation claim, plaintiff submitted no evidence that his discharge was in retaliation for filing the claim).

Summary judgment was also granted in favor of defendant on a plaintiff's wrongful discharge claim in *Galante v. Sandoz, Inc.*, 192 N.J.Super. at 405, 470 A.2d 45. In *Galante*, the plaintiff claimed that he was terminated as a result of applying for workers' compensation benefits. As in *Mallon*, the Galante court noted that, except for the fact that plaintiff had filed a claim for benefits, plaintiff "failed to offer even a scintilla of proof that his termination ... was a retaliatory move on the part of his supervisors." *Id.* at 407–408, 470 A.2d 45. Accordingly, the court found an absence of a genuine material fact and granted summary judgment in favor of defendant. *Compare Lally*, 173 N.J.Super. at 166–167, 413 A.2d 960 (finding that discharged employee had established *prima facie* case of retaliatory discharge where facts revealed that employer stated that if the employee persisted in making trouble by attempting to obtain workers' compensation benefits, she would be discharged).

■ Similarly, in the instant action, Plaintiff has not presented the Court with any facts whatsoever from which an inference may be drawn that MSC terminated her employment *because* she submitted or indicated an intention to submit a claim for workers' compensation benefits. Mere unsupported conclusory allegations contained in her complaint are insufficient to create a genuine issue of material fact in order to withstand summary judgment. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. at 586, 106 S.Ct. at 1355–56. *See also Galante*, 192 N.J.Super. at 410, 470 A.2d 45 ("no court has expanded the definition of a discriminatory discharge to include a discharge occasioned by the neutral application of an absence control policy to an employee who was injured and collected workers' compensation benefits"). Thus, the undisputed material facts contained in the summary judgment record reveal that Plaintiff cannot succeed in establishing a *prima facie* case of retaliatory discharge, and therefore, this claim must fail as a matter of law.[5]

## B. *Second Count*

■ In the Second Count of her complaint, Plaintiff alleges that MSC's termination of her employment violated "the pub-

---

**5.** Even if Plaintiff could establish her *prima facie* case of retaliatory discharge, she still could not withstand summary judgment on her retaliatory discharge claim. The Court finds that MSC has set forth a legitimate nondiscriminatory reason for her discharge—Plaintiff's violation of MSC's medical leave of absence policy—and that Plaintiff has failed to present the Court with any facts in order to show that MSC's articulated reason is a pretext to cover up a retaliatory motive.

Plaintiff's mere assertion that there is a factual issue regarding MSC's motive in terminating her employment and therefore, MSC's motivation in terminating her "is a question to be determined by the jury," is insufficient to defeat summary judgment. (Plaintiff's Mem., pp. 8–9.) Plaintiff points to no facts contained in the summary judgment record from which a reasonable jury could infer that MSC's discharge of her employment was in retaliation for her filing a claim for workers' compensation benefits. An opponent of summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586, 106 S.Ct. at 1355–56. Moreover, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* at 587, 106 S.Ct. at 1356. (citation omitted).

lic policy of the State of New Jersey." Complaint, Second Count ¶ 2.[6] Plaintiff, however, has already asserted a common law claim for retaliatory discharge based upon an alleged violation of public policy in the First Count of her complaint. Since Plaintiff has failed to identify a separate public policy in the Second Count of her complaint that was allegedly violated by her discharge, the Court finds that the allegations contained in the Second Count are merely duplicative of those contained in the First Count. Accordingly, for the reasons set forth in Part IV–A of this Opinion, the Court will grant summary judgment in favor of MSC on the Second Count of Plaintiff's complaint.

## C. Third Count

In the Third Count of Plaintiff's complaint, she alleges that she "was discriminated against by defendants in violation of the New Jersey Law Against Discrimination, N.J.S.A. §§ 10:5–1, *et seq.*, in that plaintiff's medical condition was used to disqualify and · arbitrarily terminate her from her employment." Complaint, Third Count ¶ 2. Plaintiff's claim in this Count is based upon section 10:5–4.1 of the New Jersey Law Against Discrimination ("NJLAD"), which prohibits discrimination and unlawful employment practices against any handicapped person "unless the nature and extent of the handicap reasonably precludes the performance of the particular employment." N.J.S.A. § 10:5–4.1. *See Kube v. New Penn Motor Express, Inc.,* 865 F.Supp. 221, 228 (D.N.J.1994); *McNemar v.*

*Disney Stores, Inc.,* 1995 WL 390051 (E.D.Pa. June 30, 1995).

In order to establish a *prima facie* case of discriminatory discharge based upon a violation of this section of the NJLAD, a plaintiff must prove the following:

(1) that he or she was handicapped within the meaning of the law, (2) that he or she was performing his or her job at a level that met his employer's legitimate expectations and that the handicap did not unreasonably hinder his or her job performance, (3) that he or she nevertheless was fired, and (4) that the employer sought someone to perform the same work after he or she left.

*Kube,* 865 F.Supp. at 228 (citing *Jansen v. Food Circus Supermarkets, Inc.,* 110 N.J. 363, 382, 541 A.2d 682 (1988)). *See also Maher v. New Jersey Transit Rail Operations, Inc.,* 125 N.J. 455, 482, 593 A.2d 750 (1991).

Plaintiff's claim for a violation of the NJLAD is fatally flawed for the simple reason that she cannot establish that her alleged handicap "did not unreasonably hinder her job performance." [7] Plaintiff has presented the Court with no facts, nor has she even alleged, that she was capable of performing her job at the time she was discharged by MSC. In contrast, the summary judgment record is replete with certifications of Plaintiff that she was unable to work and incapable of performing the duties of her job at the time she was discharged.[8]

---

**6.** Plaintiff does not identify in the Second Count the particular public policy that she alleges MSC violated. However, when asked by MSC in its First Set of Interrogatories to Plaintiff to describe the public policy, Plaintiff answered as follows:

The policy of the retaliatory discrimination act is one so firmly grounded in the public interest that it requires assiduous [sic] protection and enforcement. Employer conduct which undermines employee resort to worker's [sic] compensation benefits has been characterized as a matter of opprobrium and as employer misconduct which is particularly repellent. Such conduct by an employer constitutes both a public and a private wrong, each of which is entitled to vindication. (Plaintiff's Ans. No. 12, attached to Ganz Cert. as Exhibit 11).

**7.** For purposes of this discussion, the Court will assume, without deciding, that Plaintiff was "handicapped" within the meaning of the NJLAD at the relevant time.

**8.** The undisputed facts contained in the summary judgment record reveal the following:

● On May 1, 1989, Plaintiff certified in an application for short-term disability benefits that she (1) was disabled commencing April 5, 1989, (2) could not work because of the disability since April 6, 1989, and (3) had not recovered as of May 1, 1989. (Ganz Cert., Exhibit 2);

● On May 1, 1989, Dr. Harvey L. Baron, Plaintiff's physician, certified in her claim for short-term disability benefits that (1) Plaintiff has been unable to perform all the duties of her regular job since April 5, 1989, and (2) he was

496

Nowhere does Plaintiff assert that she was capable of performing her duties at the time she was discharged. In fact, in light of the representations that Plaintiff made upon seeking disability benefits, Plaintiff is judicially estopped from asserting that she was capable of performing her job at the time she was discharged.

 Judicial estoppel, or the " 'doctrine against the assertion of inconsistent positions,' ... seeks to prevent a litigant from asserting a position inconsistent with one that [he or] she has previously asserted in the same or in a previous proceeding." *Ryan Operations G.P. v. Santiam–Midwest Lumber Co.*, 81 F.3d 355, 358 (3d Cir.1996). In other words, judicial estoppel is "designed to prevent litigants from playing fast and loose with the courts." *Id.* (citations omitted).

The doctrine of judicial estoppel has been applied in situations where a plaintiff has taken one position about his or her ability to work in order to obtain workers' compensation or disability benefits, and then has sought to take the opposing position in an action for wrongful discharge. *See, e.g., McNemar*, 1995 WL 390051.

In *McNemar*, the plaintiff had represented on his applications for Social Security Disability benefits and New Jersey disability benefits that he was totally and permanently disabled. Shortly thereafter, he instituted a law suit against his employer, alleging, *inter alia*, that his employer violated the NJLAD when it terminated his employment.

In granting the employer's motion for summary judgment on the plaintiff's NJLAD

claim, the *McNemar* Court held that the plaintiff was "*estopped* from arguing now that he [was] 'qualified' under the ADA or NJLAD." *Id.* at *3 (emphasis supplied). The Court added that the plaintiff could not "be simultaneously 'unable to work' and 'qualified to perform the duties of his position.' " *Id.*

In so holding, the Court noted that "[a]lthough the Third Circuit has not directly addressed this issue, most federal courts agree that an employee who represents on a benefits application that he is disabled is judicially estopped from arguing that he is qualified to perform the duties of the position involved." *Id. See, e.g., August v. Offices Unlimited, Inc.*, 981 F.2d 576, 581–84 (1st Cir.1992) (summary judgment granted in favor of employer on plaintiff's claim for handicap discrimination under the Massachusetts anti-discrimination statute since plaintiff had made statements to disability insurer that he was totally disabled); *Beauford v. Father Flanagan's Boys' Home*, 831 F.2d 768, 770–71 (8th Cir.1987), *cert. denied*, 485 U.S. 938, 108 S.Ct. 1116, 99 L.Ed.2d 277 (1988) (holding that plaintiff could not be "otherwise qualified handicapped individual" under the Rehabilitation Act of 1973 where she had represented to disability insurance carrier that she was unable to work and received disability benefits).

Many district courts have also dismissed a plaintiff's claim for handicap discrimination under the Americans with Disabilities Act ("ADA") on summary judgment where the plaintiff had certified that he or she was completely disabled in order to receive disability benefits.[9] *See, e.g., Lewis v. Zilog*,

unable to determine when Plaintiff would be able to return to work. (Ganz Cert., Exhibit 2);
● On July 26, 1989, Plaintiff applied for long-term disability benefits. In her application, she certified that she had been unable to work because of her disability since April 6, 1989. (Ganz Cert., Exhibit B);
● In an "Attending Physician's Statement" that accompanied Plaintiff's application for long-term disability benefits, Dr. Laurence Rubenstein indicated that Plaintiff became totally disabled on April 5, 1989, that he last examined Plaintiff on August 17, 1989, and that as of the date he prepared the form, Plaintiff was totally

disabled, not only for her job at MSC but for any other job, as well. (Ganz Cert., Exhibit C);
● Plaintiff received long-term disability benefits from April 5, 1989 through May, 1992. (Ganz Cert., Exhibits 3, 7, and 8).

9. Note that the NJLAD utilizes the same analytical framework as the ADA, and therefore, an examination of cases brought under the ADA is appropriate when construing the NJLAD. *See McNemar*, 1995 WL 390051 (ADA requires as a condition of recovery that the plaintiff is a "qualified individual who, with or without reasonable accommodation can perform the essential functions of the job"). *See also* 42 U.S.C. § 12112(a).

*Inc.,* 908 F.Supp. 931 (N.D.Ga.1995); *Garcia–Paz v. Swift Textiles, Inc.,* 873 F.Supp. 547 (D.Kan.1995); *Reigel v. Kaiser Foundation Health Plan of N.C.,* 859 F.Supp. 963, 967–70 (E.D.N.C.1994); *Kennedy v. Applause, Inc.,* 1994 WL 740765 (C.D.Cal.1994). *But see Smith v. Dovenmuehle Mortgage, Inc.,* 859 F.Supp. 1138, 1141–43 (N.D.Ill.1994) (holding that although plaintiff's representation of his disability in order to receive benefits may not estop him from asserting a handicap discrimination claim, such representations will be evidence used to determine whether plaintiff was, in fact, able to perform his job).

In *Lewis,* for example, the plaintiff took a medical leave of absence from work, claiming that she could not work, and did not attempt to return to her job after going on leave. *Lewis,* 908 F.Supp. at 940. The plaintiff was then terminated pursuant to her employer's medical leave policy which only permitted medical leaves for a certain period of time. *Id.* After her termination, the plaintiff applied for and received long-term disability benefits. *Id.* at 945.

The *Lewis* Court granted summary judgment in favor of the employer on plaintiff's disability discrimination claim under the ADA. In so holding, the Court stated that:

> the Court finds not only that Plaintiff has not shown that she is a 'qualified individual with a disability,' but that Plaintiff is precluded or estopped as a matter of law from claiming that she is a 'qualified individual with a disability' accorded protection under the ADA.

*Id.* at 945 (footnote omitted).

Likewise, in the instant action, this Court finds that the undisputed material facts contained in the summary judgment record reveal that Plaintiff claimed she was totally disabled at the time of her discharge and was unable to perform her job duties. In addition, the record does not reflect that Plaintiff ever renounced her statements on the forms indicating her total disability.

*Cf. Newman v. GHS Osteopathic, Inc.,* 60 F.3d 153 (3d Cir.1995).

Because this Court finds that Plaintiff cannot "be simultaneously 'unable to work' and 'qualified to perform the duties of [her] position[,]' " *see McNemar* 1995 WL 390051 at *3, this Court holds that Plaintiff is judicially estopped from arguing that she was capable of performing her job at the time she was discharged.[10] Thus, Plaintiff's NJLAD claim fails as a matter of law since Plaintiff cannot establish that her alleged handicap did not unreasonably hinder her job performance. *See Jansen v. Food Circus Supermarkets, Inc.,* 110 N.J. 363, 382, 541 A.2d 682 (1988).

### D. *Fourth Count*

In the Fourth Count of Plaintiff's complaint, she asserts that "[s]ince the inception of the employment of the plaintiff, the defendants orally promised, covenanted, agreed and contracted to employ the plaintiff ... [and] the defendants have breached and continue to breach said contract, promise and covenant of employment." Complaint, Fourth Count ¶¶ 3, 4.

 Under New Jersey law, an employment relationship is terminable at-will unless an agreement exists between the employer and the employee that provides otherwise. *See Bernard v. IMI Sys., Inc.,* 131 N.J. 91, 105–06, 618 A.2d 338 (1993). Such an agreement between the employer and the employee may be based upon an oral promise, so long as it is a "definitive, established companywide employer policy ... and the employer's statements ... constitute 'an accurate representation of policy' which the employer was authorized to make." *Gilbert v. Durand Glass Mfg. Co.,* 258 N.J.Super. 320, 330, 609 A.2d 517 (App.Div.1992) (citations omitted).

 Although the law provides that an employer's oral promise may modify what would otherwise be an employment-at-will relationship, Plaintiff has failed to identify any oral promise made by her employer re-

---

**10.** Although this Court holds that Plaintiff is now judicially estopped from presenting evidence that she was capable of performing her job at the time she was discharged, Plaintiff has not even alleged that she was capable, nor sought to include any such evidence of her capabilities in the summary judgment record.

**498**

garding the status of her employment which would alter the presumptive employment-at-will relationship. Instead, Plaintiff contends that a statement made by a claims representative of Zurich, MSC's workers' compensation carrier, that MSC's ninety-day medical leave of absence policy did not apply to her, constituted an oral promise concerning the terms and conditions of her employment. (Plaintiff's Answers to Interrogatories, attached to Plaintiff's Mem. as Exhibit A).

This alleged statement made by an employee of Zurich, MSC's workers' compensation carrier, does not constitute an employment contract primarily because the statement was not a statement made by Plaintiff's employer, and therefore is clearly not "an accurate representation of policy which the employer was authorized to make." See Gilbert v. Durand Glass Mfg. Co., 258 N.J.Super. at 330, 609 A.2d 517. The summary judgment record does not contain any oral statements made by MSC regarding the terms or conditions of her employment. Accordingly, since the Plaintiff cannot demonstrate that an oral agreement existed between MSC and her, Plaintiff's claim against MSC for breach of an oral contract must fail as a matter of law.

### E. Fifth Count

Plaintiff alleges in the Fifth Count of her complaint that she "relied to her detriment on an implied contract of employment by the defendants." Complaint, Fifth Count ¶ 2. Plaintiff claims that MSC's Employee Orientation Handbook ("Handbook") constituted a contract of employment which MSC breached when it terminated her employment. MSC contends that it never entered into an employment agreement with Plaintiff and any implicit promises contained in the Handbook were not breached by her discharge.

Plaintiff's breach of contract claim is founded upon the New Jersey Supreme Court's decision in Woolley v. Hoffmann–LaRoche, 99 N.J. 284, 491 A.2d 1257, modified, 101 N.J. 10, 499 A.2d 515 (1985), in which the Court held, under appropriate cir-

cumstances, that an employment manual could constitute a binding employment contract and thus alter what would otherwise be an employment-at-will relationship between an employer and an employee.

In Woolley, the New Jersey Supreme Court established that "absent a clear and prominent disclaimer, an implied promise contained in an employment manual that an employee will be fired only for cause may be enforceable against an employer even when the employment is for an indefinite term and would otherwise be employment at will." Id. at 285, 491 A.2d 1257. While the Woolley Court noted that "a policy manual that provides for job security grants an important protection for workers ... [which] an employer should be required to honor," id. at 297, 491 A.2d 1257, the Court also made it clear that this implied contract "was not meant to protect against any termination, but only to safeguard employment from arbitrary termination." Mallon, 688 F.Supp. at 1007 (citing Woolley, 99 N.J. at 301 n. 8, 491 A.2d 1257).

■ The issue presented to the Court on this claim is two-fold: first, what were the grounds for Plaintiff's discharge, and second, whether the discharge violated the Handbook, or any other document promulgated by MSC.[11] The undisputed material facts presented to the Court demonstrate that Plaintiff was discharged for failing to return from her medical leave of absence after ninety days. Nonetheless, Plaintiff claims that her discharge was in violation of the Handbook. Specifically, Plaintiff contends that, because a violation of a medical leave of absence policy is not an enumerated "cause" for termination, her termination for that purpose was in violation of the Handbook.

Plaintiff's argument is flawed for several reasons. First, the Handbook, itself, states that "[t]his list [of causes for termination] should not be considered all-encompassing, as any action detrimental to the welfare of the Company and its employees may result in disciplinary action." (Handbook, pp. 18–

---

11. Although MSC argues that the Handbook does not constitute a valid and enforceable contract under Woolley, this Court need not reach that issue because Plaintiff has failed to point to any provision in the Handbook which MSC violated by terminating her employment.

19, attached to Plaintiff's Mem. as Exhibit J). Moreover, the Handbook contains a section relating to leave of absence policies which is wholly separate from its disciplinary policy. Plaintiff was discharged for failure to adhere to MSC's leave of absence policy.

Plaintiff also contends that her discharge was in violation of the Revised Leave of Absence Policy. Plaintiff alleges that:

in reading the 'Revised Leave of Absence Policy' one is **not** left with the impression that an employee loses her employment if she exceeds the three (3) month period. Instead, the reader is left with the impression that, at most, ones [sic] benefits are terminated, and one must resort to other forms of compensation and benefits.

(Plaintiff's Mem., pp. 10–11). Plaintiff's interpretation of the Policy is illogical and unreasonable. The plain language of the Revised Leave of Absence Policy states that an employee risks termination if he or she does not return to work after a medical leave of three month duration.[12] Accordingly, the Court finds that MSC complied with its policy of not permitting an employee's medical leave to extend beyond ninety days when it discharged Plaintiff. Plaintiff's breach of contract claim thus fails as a matter of law.

### F. Sixth Count

In the Sixth Count of her complaint, Plaintiff claims that MSC "intentionally and negligently inflicted grave, serious and permanent emotional distress on the plaintiffs as a result of the aforementioned termination." Complaint, Sixth Count ¶ 2.

■■■■ Plaintiff's claim for the intentional infliction of emotional distress fails as a matter of law. A successful claim for intentional infliction of emotional distress requires a plaintiff to establish that defendant's conduct was "[s]o outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Buckley v. Trenton Saving Fund Soc.,* 111 N.J. 355, 365–66, 544 A.2d 857 (1988); *see also Roxanne Gennari v. Weichert Co. Realtors,* 288 N.J.Super. 504,

672 A.2d 1190 (App.Div.1996). The emotional distress suffered by the plaintiff must be "so severe that no reasonable man could be expected to endure it." *Buckley v. Trenton Saving Fund Soc.,* 111 N.J. at 365–66, 544 A.2d 857.

Plaintiff has not only failed to demonstrate that MSC's behavior under these circumstances reached the requisite level of "outrageousness," or that she has suffered exceptionally severe emotional distress, she has also failed to present evidence of any damages resulting from MSC's conduct. Accordingly, Plaintiff cannot succeed in her claim for intentional infliction of emotional distress as a matter of law.

■■■■ Negligent infliction of emotional distress requires the establishment of the following elements:

(1) the death or serious physical injury of another caused by defendant's negligence; (2) a marital or intimate familial relationship between plaintiff and the injured person; (3) observation of the death or injury at the scene; and (4) severe emotional distress.

*Portee v. Jaffee,* 84 N.J. 88, 101, 417 A.2d 521 (1980); *Trisuzzi v. Tabatchnik,* 285 N.J.Super. 15, 25, 666 A.2d 543 (App.Div.1995). Plaintiff has not alleged or presented any facts to support any one of the four elements of this state law cause of action, and therefore, her claim for the negligent infliction of emotional distress also must fail as a matter of law.

For the reasons set forth above, this Court will grant MSC's motion for summary judgment. The Court will enter an appropriate order.

### ORDER

This matter having come before the Court on Defendant's motion for summary judgment, Alan G. Lesnewich, Esq., and David H. Ganz, Esq., of Collier, Jacob & Mills, P.C., appearing on behalf of Defendant, Siemens MC, Inc., incorrectly identified in the caption of the complaint as Microwave Semiconduc-

---

**12.** The Revised Medical Leave of Absence Policy states that "Medical Leaves will have a maxi- mum duration of three (3) months." (Plaintiff's Mem., Exhibit L).

tor Corp., Linda D. Costabile, Esq., of the Law Office of A. Kenneth Weiner, Esq., appearing on behalf of Plaintiff; and,

The Court having considered the written submissions of the parties, including Defendant's Memorandum of Law in Support of its Motion for Summary Judgment, with the Certification and Supplemental Certification of David H. Ganz, Esq., filed in support thereof, Plaintiff's Memorandum of Law in Opposition to Defendant's Motion for Summary Judgment, and Defendant's Reply Memorandum of Law;

For the reasons set forth in the Court's Opinion filed concurrently with this Order;

IT IS HEREBY ORDERED on this 31st day of May, 1996, that Defendant's motion for summary judgment is granted.