**Penny BACKER, Plaintiff,**

v.

**WYETH–AYERST LABORATORIES, Defendant.**

No. 1:95–CV–814.

United States District Court,
W.D. Michigan,
Southern Division.

Nov. 15, 1996.

Randie K. Black, Randie Black Law Offices, Okemos, MI, for plaintiff.

Scott L. Gorland, Judith E. Caliman, Pepper, Hamilton & Scheetz, Detroit, MI, for defendant.

## OPINION

QUIST, District Judge.

This matter is before the Court on "Defendant American Home Products Corporation's Motion for Summary Judgment." Wyeth–Ayerst Laboratories is a division of American Home Products Corporation. Jurisdiction in this case is based upon diversity jurisdiction. In Count I of Plaintiff's complaint, Plaintiff alleges a violation of the Michigan Handicapper's Civil Rights Act ("MHCRA"), M.C.L. §§ 37.1101–37.1607. In Count II, Plaintiff alleges constructive discharge. In Count III, Plaintiff alleges intentional infliction of emotional distress. Defendant claims that Plaintiff is not able to establish a *prima facie* case for any of the claims and now moves the Court for summary judgment on all counts pursuant to Fed.R.Civ.P. 56.

### Facts

Plaintiff, Penny Backer, began work with Wyeth–Ayerst Laboratories in October of 1991. Plaintiff worked as a senior general clerk in the scheduling unit department of the production control division. Plaintiff's job responsibilities consisted primarily of maintaining production schedules, accumulating information for monthly production reports, duplicating and distributing schedules, and providing back-up relief within the division.

Plaintiff has a history of allergies to molds and pollens. In September of 1992, Plaintiff reported that she was allergic to a co-work-

er's perfume and that her exposure to the perfume caused burning in her nose and lungs. Plaintiff alleges that her respiratory ailments became worse and that she only experienced these ailments while at work. In late 1993, Plaintiff began complaining that she could smell chlorine and cleaning chemicals in the office and that this caused her to experience respiratory problems. Plaintiff requested that she be provided with a breathing mask, a respirator, and/or an air cleaner. Plaintiff further requested that she be moved to an enclosed back office or relocated to Defendant's TG & Y store or Defendant's Lansing Warehouse. Plaintiff also requested air quality testing be done in the office building.

Plaintiff consulted frequently with the staff nurse and doctor at the Employee Health Services Office. They provided her with advice and medication. They also consulted with her private doctors, the office safety coordinator, and Plaintiff's supervisor regarding Plaintiff's respiratory ailments. Additionally, they provided Plaintiff's personal physician with a list of cleaning chemicals used in the plant. Moreover, Defendant relocated Plaintiff to other cubicles within the same building, provided Plaintiff with dust masks to wear while at work, provided Plaintiff with a clean air machine, relieved Plaintiff from some of her job duties when she was feeling ill, offered her time to lie down and rest when needed, asked other co-workers to refrain from wearing perfume, provided paid time-off for smoking cessation programs and weekly allergy shots, provided air quality testing, and provided paid medical leave.

Plaintiff went on medical leave on February 7, 1994. Dr. Kelly, Plaintiff's personal physician, concluded that Plaintiff had a permanent respiratory condition with allergic responses to a variety of respiratory irritants and that she was not fit to work in employment settings where there are volatile chemicals and other respiratory irritants. Six months after she began her medical leave, Plaintiff's employment was terminated pursuant to company policy.

In September of 1994, Plaintiff began working part-time for the Social Security Administration. Plaintiff experienced allergic reactions at that office and, because of this, used most of her sick and vacation time. Plaintiff voluntarily left this position in January of 1995 and accepted a full-time position with the City of Lansing. The City of Lansing terminated Plaintiff in May of 1995 for excessive tardiness. Plaintiff then filed workers' compensation claims with Defendant and the City of Lansing. She obtained settlements from both of these former employers. In May of 1996, Plaintiff was awarded Social Security Disability benefits for being totally disabled.

Plaintiff argues that Defendant knew of her allergies and asthma but failed to accommodate her respiratory problems. Defendant claims that it reasonably accommodated Plaintiff's respiratory problems; therefore, Defendant maintains that Plaintiff is unable to establish a prima facie case of handicap discrimination under the MHCRA. Defendant further maintains that Plaintiff cannot establish a case of constructive discharge or intentional infliction of emotional distress.

### Discussion

**1. Legal Standard**

Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to a judgment as a matter of law. Fed.R.Civ.P. 56. The rule requires that the disputed facts be material. Material facts are facts which are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A dispute over trivial facts which are not necessary in order to apply the substantive law does not prevent the granting of a motion for summary judgment. *Id.* at 248, 106 S.Ct. at 2510. The rule also requires the dispute to be genuine. A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.* This standard requires the non-moving party to present more than a scintilla of evidence to defeat the motion. *Id.* at 251, 106 S.Ct. at 2511 (citing *Schuylkill and Dauphin Improvement Co. v. Munson*, 14 Wall. 442, 448, 20 L.Ed. 867 (1872)). The summary judgment standard mirrors the standard for

a directed verdict. *Id.* at 250, 106 S.Ct. at 2511. The only difference between the two is procedural. *Id.* Summary judgment is made based on documentary evidence before trial, and directed verdict is made based on evidence submitted at trial. *Id.*

A moving party who does not have the burden of proof at trial may properly support a motion for summary judgment by showing the court that there is no evidence to support the non-moving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 324–25, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). If the motion is so supported, the party opposing the motion must then demonstrate with "concrete evidence" that there is a genuine issue of material fact for trial. *Id.; Frank v. D'Ambrosi,* 4 F.3d 1378, 1384 (6th Cir.1993). The court must draw all inferences in a light most favorable to the non-moving party, but the court may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Financial Corp. v. Van Sickle,* 967 F.2d 233, 236 (6th Cir.1992) (quoting *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986)).

### 2. Michigan Handicapper's Civil Rights Act Claim

■ The MHCRA was enacted in part to address the plight of the handicapped in the work force. *See generally* Stewart R. Hakola & Joseph F. Lavey II, *Forty–Three Million Strong: An Overview of Civil Rights Protections for Persons with Disabilities,* 70 Mich.B.J. 548 (1991); Cynthia Lynne Pike, Note, *Assessing the Impact: The 1990 Amendments to the Michigan Handicappers' Civil Rights Act and the Americans With Disabilities Act,* 37 Wayne L.R. 1903 (1991). The MHCRA requires employers to make reasonable accommodations for employees with job-related disabilities, unless the accommodations impose undue hardship upon the employer. *See,* Hakola & Lavey, *supra,* at 551; Pike, *supra,* at 1908. *Id.* Thus, under Section 37.1102(2) of the MHCRA, an employer "shall accommodate a handicapper for purposes of employment ... unless the person demonstrates that the accommodation would impose an undue hardship."

■ In order to prevail on a MHCRA claim, a plaintiff must first establish a prima facie case of handicap discrimination.[1] In order to establish a prima facie case of handicap discrimination, a plaintiff must show: 1) she is "handicapped" as defined by the MHCRA, 2) her handicap is unrelated to her ability to perform the duties of her particular job, and 3) she has been discriminated against in one of the ways set forth in the statute. *Hall v. Hackley Hosp.,* 210 Mich. App. 48, 53–54, 532 N.W.2d 893, 896 (1995) (citing *Merillat v. Michigan State Univ.,* 207 Mich.App. 240, 245, 523 N.W.2d 802, 805 (1994)). *See also Brown v. Sprint,* 891 F.Supp. 396, 399 (E.D.Mich.1995); *Sanchez v. Lagoudakis,* 217 Mich.App. 535, 539, 552 N.W.2d 472, 476 (1996).

Section 37.1103(e) defines "handicap" as "[a] determinable physical or mental characteristic of an individual, which may result from disease, injury, congenital condition of birth, or functional disorder, if the characteristic ... substantially limits 1 or more of the major life activities of that individual and is unrelated to the individual's ability to perform the duties of a particular job or position."

■ This Court finds that Plaintiff has shown that her respiratory ailments are determinable characteristics that substantially limit her ability to breathe and to work. *See Garza v. Abbott Labs.,* 940 F.Supp. 1227, 1234–39 (N.D.Ill.1996) (analyzing Americans With Disabilities Act claim and status of

---

1. Section 37.1210(1) of the MHCRA sets forth the burden of proof and burden of production as follows:

   In an action brought pursuant to this article for a failure to accommodate, the handicapper shall bear the burden of proof. If the handicapper proves a prima facie case, the person shall bear the burden of producing evidence that an accommodation would impose an undue hardship on that person. If the person produces evidence that an accommodation would impose an undue hardship on that person, the handicapper shall bear the burden of proving by a preponderance of the evidence that an accommodation would not impose an undue hardship on that person.

plaintiff as "disabled"). However, the inquiry does not end here; Plaintiff must show that this "characteristic" is unrelated to her ability to perform the duties of her job.

■ Section 37.1103(*l*) defines "unrelated to the individual's ability" as "with or without accommodation, an individual's handicap does not prevent the individual from . . . performing the duties of a particular job or position." [2] Thus, Plaintiff would have to show that she "had a handicap which either did not interfere with her job or which would not interfere with her job if reasonably accommodated." *Sherman v. Optical Imaging Sys., Inc.*, 843 F.Supp. 1168, 1177 (E.D.Mich. 1994). *See also Fritz v. Mascotech Automotive Sys. Group, Inc.*, 914 F.Supp. 1481, 1491–92 (E.D.Mich.1996); *Mauro v. Borgess Medical Center*, 886 F.Supp. 1349, 1355 (W.D.Mich.1995). In fact, the MHCRA was amended in 1990 to clarify that accommodations must be considered when determining whether or not an employee's handicap is unrelated to her ability to perform her job. *See* Hakola & Lavey, *supra*, at 551; Pike, *supra*, at 1908.

■ The Sixth Circuit in *Monette v. Electronic Data Sys. Corp.*, 90 F.3d 1173 (6th Cir.1996) stated:

In cases in which the plaintiff is seeking some accommodation on the part of the employer, and is claiming that he or she would be qualified to perform the essential functions of the job with such reasonable accommodation, the disputed issues will be whether such accommodation is reasonable, whether such accommodation would impose undue hardship upon the employer, and/or whether the plaintiff is capable of performing the job even with the suggested accommodation, each of which may also be resolved through direct, objective evidence.

*Id.* at 1183. Thus, Plaintiff must show that a proposed accommodation is reasonable and that Plaintiff is capable of performing her job with the proposed accommodation.

In determining whether a proposed accommodation is reasonable, the Sixth Circuit indicated that the first determination must be whether a proposed accommodation is, in a sense, generally reasonable. *Id.* at 1184–85 n. 10. The Sixth Circuit pointed out that under the MHCRA, once a plaintiff establishes that a proposed accommodation is generally reasonable, then the defendant employer bears the burden of producing evidence that the proposed accommodation would impose an undue hardship. *Id.* (citing *Hall*, 532 N.W.2d at 896). Once the defendant does this, the burden shifts back to the plaintiff to prove that no undue hardship would be imposed upon the defendant. *Id.*

---

2. Plaintiff claimed that she was totally disabled in her claim to the Social Security Administration. She collects social security disability benefits. Several courts recently have discussed judicial estoppel in handicap discrimination cases where plaintiffs claim total disability in order to obtain disability benefits. The Ninth Circuit described judicial estoppel as:

the doctrine of preclusion of inconsistent positions, preclud[ing] a party from gaining an advantage by taking one position, and then seeking a second advantage by taking an incompatible position.

*Rissetto v. Plumbers and Steamfitters Local 343*, 94 F.3d 597, 600 (9th Cir.1996) (citing, among others, 18 Charles A. Wright, Arthur R. Miller and Edward H. Cooper, *Federal Practice & Procedure* § 4477 (1981 & Supp.1995)). *See also Edwards v. Aetna Life Ins. Co.*, 690 F.2d 595, 598 (6th Cir.1982).

A growing number of courts have held that if a plaintiff claims total disability in order to receive disability benefits, then that plaintiff is estopped from asserting that her disability is not related to the performance of her job. *Rissetto*, 94 F.3d at 600; *McNemar v. Disney Store, Inc.*, 91 F.3d 610,

620 (3d Cir.1996); *Griffith v. Wal–Mart Stores, Inc.*, 930 F.Supp. 1167, 1174 (E.D.Ky.1996); *Morris v. Siemens Components, Inc.*, 928 F.Supp. 486, 496–97 (D.N.J.1996); *Torsky v. Avon Prods., Inc.*, 707 F.Supp. 942, 946 (W.D.Mich.1988). *See also Lewis v. Zilog, Inc.*, 908 F.Supp. 931, 945 (N.D.Ga.1995) (recognizing courts that have held an employee's claiming total disability in order to receive disability payments precludes that employee's Americans With Disabilities Act claim).

Courts that have not applied judicial estoppel in similar cases have used the assertion of total disability against the plaintiff in a motion for summary judgment. *See Overton v. Reilly*, 977 F.2d 1190, 1196 (7th Cir.1992); *Dockery v. North Shore Med. Ctr.*, 909 F.Supp. 1550, 1559 (S.D.Fla.1995); *Smith v. Dovenmuehle Mortgage, Inc.*, 859 F.Supp. 1138, 1141–43 (N.D.Ill.1994).

However, in the case before this Court, the record is unclear as to when Plaintiff claimed total disability. Therefore, this Court will not determine whether Plaintiff should be estopped from claiming handicap discrimination.

This Court finds that Plaintiff's proposed accommodations fail either in that they are not reasonable or that, even with the proposed accommodation, Plaintiff would not be capable of performing her job. First, Plaintiff requested that Defendant relocate her to a different area in the office. Defendant moved Plaintiff twice to different cubicles on the same floor. However, these relocations did not help Plaintiff. Defendant also offered to move Plaintiff to another floor. However, Plaintiff rejected this offer because this area was near laboratories and most likely also would have been proven to be ineffective in relieving her respiratory problems. Plaintiff also requested that Defendant move her to an enclosed back office. Defendant indicated that if an enclosed back office became available that Plaintiff would be allowed to move there. However, Plaintiff would still need to enter and exit the office and deliver schedule changes throughout the building. Thus, even with this accommodation, Plaintiff would not have been capable of performing her job.

Plaintiff also requested that the Defendant provide air quality testing by an outside contractor testing for specific irritants. Defendant did provide air quality testing in late 1992. However, Plaintiff claimed this was inadequate because the testing was done by a Wyeth–Ayerst employee and the testing was for carbon dioxide, carbon monoxide, temperature, and humidity, and that these tests were not comprehensive enough. However, Defendant did, on occasion, perform air quality testing, by both its own employees and outside contractors.

Next, Plaintiff proposed that Defendant provide her with masks and/or a respirator. Plaintiff requested a full face air respirator. However, Plaintiff's personal physician conceded that this type of respirator would not be in Plaintiff's best medical interest and may cause more harm than good. Defendant did provide Plaintiff with dust masks to wear while at work; however, Plaintiff stopped wearing the masks because she claimed that it offered her no relief. Plaintiff maintains that something between a full face air respirator and dust masks should have been provided to her by the Defendant. Plaintiff

claims that Michigan Rehab suggested several types of masks that Plaintiff could wear. However, Plaintiff never obtained one of these masks from Michigan Rehab and Plaintiff's personal physician never prescribed one of these masks for Plaintiff's use. Plaintiff could have obtained some type of "acceptable" mask or respirator from her personal physician and then could have worn it to work. However, Plaintiff and Plaintiff's personal physician failed even to indicate what mask or respirator the Defendant was "supposed to" provide.

Plaintiff also requested an air cleaner for her cubicle. An air cleaner was provided and Plaintiff claimed it offered her some relief. However, Plaintiff wanted a better air cleaner. Plaintiff later obtained air cleaners from Michigan Rehab free of charge.

Plaintiff further proposed that Defendant move her to another building. However, Plaintiff did not show that the other buildings were free of any chemicals or other irritants that would cause Plaintiff respiratory distress. Plaintiff has shown that she has a history of allergies to dust and pollens. Plaintiff also has shown that she has allergic reactions to co-workers' perfume and cleaning chemicals. However, the cleaning chemicals that Plaintiff is allergic to are stored in one of the buildings she proposed that she be moved to. Moreover, Plaintiff has not shown that she would be free from exposure to dust, pollens, perfumes, or other irritants if she were transferred to another building. In all likelihood she would be exposed to these irritants.

Additionally, Plaintiff did not show that the essential functions of her job could be performed from another building. Plaintiff would be unable to distribute production schedule changes, interact with other members of her unit, or receive supervision from her unit supervisor if she worked in another building. Under Section 37.1210(15) of the MHCRA, job restructuring "applies only to minor or infrequent duties relating to the particular job held by the handicapper." Maintaining production schedules, making changes to the schedules, and distributing the schedule changes to the various departments were the primary duties of Plaintiff's

job. The smooth flow of production is critical to a manufacturing plant. Thus, it was essential that Plaintiff be stationed with her unit in order to work with other employees within her unit, provide the other departments in the building with schedule changes, and have her duties supervised by her unit supervisor.

Plaintiff implied that if the air in the building where her job was located were free from "clean in place" ("CIP") chemicals then Plaintiff could perform her job. However, CIP chemicals are necessary for the sterilization of a baby food plant and it would be unreasonable to expect a baby food manufacturing plant to eliminate necessary cleaning chemicals.

However, Plaintiff claims that the air from the plant containing the CIP chemicals should not be in the office building where her job is located. However, even if this were true, Plaintiff claims sensitivity to, among other things, perfume, dust, and mold. In fact, Plaintiff's attempts to work in other buildings after she had left Defendant's employment show sensitivity to the air—and these places were office buildings having nothing to do with food products.

Plaintiff claims that her condition is now worse because of her exposure to chemicals at Defendant's office and this accounts for the respiratory problems she experienced in other office buildings. Plaintiffs argument fails for several reasons. First, Plaintiff admits having sensitivity to certain irritants since 1988. Second, Plaintiff had seemingly severe reactions to perfume at the beginning of her employment with Defendant. Finally, Plaintiff claims that she experienced respiratory distress while at work but that she was fine when she left work. If this is true, then Plaintiff should have been able to work comfortably while at other offices. Thus, Plaintiff's requests for accommodations either were not reasonable or, even with the accommodations, Plaintiff would not have been capable of performing her job.

Moreover, this Court finds that Defendant made reasonable attempts to accommodate Plaintiff. In an Americans With Disabilities Act case,[3] the Sixth Circuit held that an "employee cannot make his employer provide a specific accommodation [even if reasonable] if another reasonable accommodation is instead provided." *Hankins v. The Gap, Inc.,* 84 F.3d 797, 800–01 (6th Cir.1996) (citing *Ansonia Bd. of Educ. v. Philbrook,* 479 U.S. 60, 68–69, 107 S.Ct. 367, 371–72, 93 L.Ed.2d 305 (1986)). Plaintiff received assistance from the staff nurse and doctor at the Employee Health Services Office. In addition, Defendant made numerous attempts to accommodate Plaintiff. For example, Defendant relocated Plaintiff to other cubicles within the same building, provided Plaintiff with dust masks to wear while at work, and provided Plaintiff with a clean air machine. In addition, Defendant relieved Plaintiff from some of her job duties when she was feeling ill, offered her time to lie down and rest when needed, and asked other co-workers to refrain from wearing perfume. Defendant also provided paid time-off for smoking cessation programs and weekly allergy shots, air quality testing, and paid medical leave. Thus, even if Plaintiff could show that the accommodations she requested were reasonable, Defendant has provided Plaintiff with other reasonable accommodations and was not required to provide Plaintiff with the specific accommodations she requested.

Plaintiff has failed to establish that Defendant did not provide reasonable accommodations in violation of the MHCRA. Therefore, this Court holds that Plaintiff has not established a prima facie case of handicap discrimination. Thus, Defendant is entitled to summary judgment as to Count I of Plaintiff's complaint.

**3. Constructive Discharge Claim**

Count II of Plaintiff's complaint alleges constructive discharge. Constructive discharge is found "in situations in which working conditions were so difficult or unpleasant that a reasonable person in the em-

---

**3.** "Claims of handicap discrimination under Michigan law essentially track those under federal law." *Monette v. Electronic Data Sys. Corp.,* 90 F.3d 1173, 1178 n. 3 (6th Cir.1996). *See also*

*Fritz v. Mascotech Automotive Sys. Group, Inc.,* 914 F.Supp. 1481, 1491 (E.D.Mich.1996) (stating that analysis under the Americans With Disabilities Act parallels analysis under the MHCRA).

ployee's shoes would have been compelled to resign." *Storch v. Beacon Hotel Corp.*, 788 F.Supp. 960, 965 (E.D.Mich.1992) (citing *Held v. Gulf Oil Co.*, 684 F.2d 427, 432 (6th Cir.1982)). *See also Pitts v. Michael Miller Car Rental*, 942 F.2d 1067, 1072 (6th Cir. 1991). According to the Sixth Circuit:

> A finding of constructive discharge depends on the facts of each case. Constructive discharge requires an examination of the intent of the employer. An employer will be held to intend the reasonably foreseeable consequences of his or her conduct. Where discrimination is charged, the plaintiff "can make a jury submissible case ... by showing discrimination plus aggravating circumstances," such as continuous and pervasive discriminatory treatment spanning a substantial period of time.

*Pitts*, 942 F.2d at 1072 (citations omitted). In *Pitts*, the Sixth Circuit determined that the record did not support a finding of constructive discharge because, although plaintiff established a prima facie case of discrimination, she did not present additional aggravating circumstances. *Id.* In the case before this Court, not only has Plaintiff failed to establish a prima facie case of discrimination, she has failed to present any additional aggravating circumstances that would lead this Court to believe that there had been constructive discharge. Thus, Defendant is entitled to summary judgment on Count II of Plaintiff's complaint.

### 4. Intentional Infliction of Emotional Distress Claim

In Count III, Plaintiff asserts a claim for intentional infliction of emotional distress. However, Plaintiff must show that Defendant's conduct " 'has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community.' " *Mauro v. Borgess Med. Ctr.*, 886 F.Supp. 1349, 1355–56 (W.D.Mich.1995) (quoting *Roberts v. Auto–Owners Ins. Co.*, 422 Mich. 594, 602–03, 374 N.W.2d 905 (1985)). Defendant's attempts to accommodate Plaintiff, discussed earlier, are far from "atrocious, and utterly intolerable in a civilized community." Thus, Defendant is entitled to summary judgment on Count III of Plaintiff's complaint.

### Conclusion

For the foregoing reasons, this Court holds that Plaintiff has failed to establish a prima facie case of handicap discrimination under the MHCRA. Furthermore, Plaintiff has failed to show a claim of constructive discharge or intentional infliction of emotional distress. Therefore, Defendant's motion for summary judgment will be GRANTED.