Charles G. ERIT, Plaintiff,

v.

JUDGE, INC., et al., Defendants.

Civil Action No. 96–1878.

United States District Court,
D. New Jersey.

April 18, 1997.

John J. Markwardt, Markwardt & Sander, P.A., North Voorhees, NJ, for Plaintiff.

Michael P. Madden, Patrick J. Madden, Madden, Madden & Del Duca, P.A., East Hadddonfield, NJ, for Defendants.

## OPINION

ORLOFSKY, District Judge.

Defendants have moved for summary judgment pursuant to Fed.R.Civ.P. 56 on Plaintiff's complaint. Jurisdiction is conferred upon this Court by 28 U.S.C. § 1331. In this employment discrimination case, Plaintiff seeks a determination by this Court whether his termination from employment was in violation of federal and state law. As a threshold matter, however, this case presents the narrow issue, recently addressed by the Third Circuit in *McNemar v. Disney Store, Inc.*, 91 F.3d 610 (3d Cir.1996), of whether a plaintiff is judicially estopped from contending that his or her termination was in violation of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, *et seq.*, and the New Jersey Law Against Discrimination ("NJLAD"), N.J.S.A. §§ 10:5–1, *et seq.*, when at the time of the discharge the plaintiff had filed applications for disability benefits claiming that he or she was disabled and could not work. For the reasons which follow, this Court concludes that Plaintiff's ADA and NJLAD claims are barred by the doctrine of judicial estoppel. I also conclude that Defendants are entitled to summary judgment on the remaining claims set forth in the complaint.[1]

## I. Facts and Procedural Background

This action arises out of Judge Computer Corporation's termination of Plaintiff's employment on or about March 7, 1994.[2]

1. Plaintiff contends that the Defendants violated his right to procedural due process, (Fourth Count), and breached a contract of employment between the Defendants and him. (Fifth Count). In the Sixth Count, Plaintiff alleges that the Defendants are liable for conversion, and in the Seventh Count, Plaintiff contends that the Defendants violated the New Jersey Consumer Fraud Act, N.J.S.A. §§ 56:8–1, *et seq.* Finally, Plaintiff maintains that he has suffered damages as a result of the Defendants' intentional and negligent infliction of emotional distress. (Ninth and Tenth Counts, respectively).

2. Defendants contend that Plaintiff requested that Judge terminate his employment because his disability payments were about to expire, and in order to collect unemployment compensation, his employment had to be terminated. Plaintiff, however, asserts that he did not ask to be terminated. In light of this Court's holding that Plaintiff is estopped from asserting that his termination was in violation of the ADA or the NJLAD,

Plaintiff began working for Judge Computer Corporation ("Judge") in Moorestown, New Jersey, in April, 1993, as a computer network engineer. Approximately five months later, on September 19, 1993, Plaintiff was severely injured when he fell from a three-story parking garage in New Orleans, Louisiana.[3]

Shortly after the incident, on October 27, 1993, Plaintiff applied for, and received disability benefits from the State of New Jersey. (Defendants' Appendix ("D.A."), Exs. H,I,J). In connection with Plaintiff's application for disability benefits from the State of New Jersey, Plaintiff stated in sworn certifications that he "was unable to work during the period for which benefits are claimed ..." (D.A., Ex.H), and that he has been "continuously disabled since the date of [the incident]." (D.A., Exs.I,J).

On July 28, 1994, Plaintiff applied for Social Security Disability Insurance Benefits. In support of his application for such benefits, Plaintiff likewise certified that he "became unable to work because of [his] disabling condition on September 19, 1993," and that he "[is] still disabled." (D.A., Ex.K). In addition, on the application for Supplemental Security Income from the Social Security Administration, Plaintiff stated that he "[is] disabled," and that "[t]he disability began on September 19, 1993." (D.A., Ex.L).

On April 22, 1996, Plaintiff filed this complaint, arising out of Judge's termination of his employment. The complaint advances several theories upon which Plaintiff relies in contending that his termination was violative of both federal and New Jersey law. Specifically, Plaintiff alleges that in terminating his employment, the Defendants unlawfully discriminated against him on the basis of his disability, in violation of the ADA, (First and Eighth Counts), and the NJLAD (Second, Third and Eighth Counts).

Plaintiff further contends that the Defendants violated his right to procedural due process, (Fourth Count), and breached a con-

tract of employment between the Defendants and him. (Fifth Count). In the Sixth Count, Plaintiff also alleges that the Defendants are liable for conversion, and in the Seventh Count, Plaintiff contends that the Defendants violated the New Jersey Consumer Fraud Act, N.J.S.A. §§ 56:8–1, et seq. Finally, Plaintiff maintains that he has suffered damages as a result of the Defendants' intentional and negligent infliction of emotional distress. (Ninth and Tenth Counts, respectively). On March 26, 1997, Defendants moved for summary judgment on Plaintiff's complaint.

## II. Summary Judgment Standard

A party seeking summary judgment must "show that there is no genuine issue as to any material fact and that [he or she] is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). See also Hersh v. Allen Products Co., 789 F.2d 230, 232 (3d Cir.1986); Lang v. New York Life Ins. Co., 721 F.2d 118, 119 (3d Cir.1983). A district court must grant summary judgment when there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Orson, Inc. v. Miramax Film Corp., 79 F.3d 1358, 1366 (3d Cir.1996). In deciding whether there is a disputed issue of material fact the Court must view all inferences, doubts and issues of credibility in favor of the non-moving party. See Hancock Indus. v. Schaeffer, 811 F.2d 225, 231 (3d Cir.1987) (citation omitted); Meyer v. Riegel Prods. Corp., 720 F.2d 303, 307 n. 2 (3d Cir.1983), cert. dismissed, 465 U.S. 1091, 104 S.Ct. 2144, 79 L.Ed.2d 910 (1984). The threshold inquiry is whether there are "any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

Moreover, Federal Rule of Civil Procedure 56(e) provides:

this dispute is not material for purposes of this motion.

**3.** The parties disagree over whether the Plaintiff's fall was an apparent suicide attempt, or whether Plaintiff accidentally fell or was pushed from the parking garage. This dispute, however, is immaterial for purposes of this summary judgment motion.

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

Fed.R.Civ.P. 56(e).

Under this rule, a defendant must be awarded summary judgment on all properly supported issues identified in its motion, except for those for which a plaintiff has provided evidence to show that a question of material fact remains. Put another way, once the moving party has properly supported its motion, "its opponent must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). A summary judgment movant may meet its burden by showing that the opposing party is unable to meet its burden of proof at trial. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 2553–54, 91 L.Ed.2d 265 (1986). Nonetheless, defendants, as the moving parties on the motion, bear the initial responsibility of demonstrating the absence of a genuine issue of material fact. *Id.*

### III. Discussion

The issue before this Court is whether Judge's termination of Plaintiff's employment was in violation of either federal or New Jersey law. Plaintiff's complaint sets forth numerous claims, each of which will be considered in turn to determine whether it can withstand Defendants' motion for summary judgment. Because the Court finds that the undisputed material facts contained in the summary judgment record indicate that Plaintiff cannot establish that Judge's termi-

nation of Plaintiff's employment was in violation of either federal or New Jersey law, Defendants' motion for summary judgment will be granted.

### A. Plaintiff's ADA and NJLAD Claims

In the First, Second, Third and Eighth Counts of Plaintiff's complaint, Plaintiff alleges that he was discriminated against by Defendants in violation of the ADA and the NJLAD, in that Plaintiff's disability was used to disqualify him and arbitrarily terminate his employment.[4]

Because the ADA and the NJLAD employ the same analytical framework in determining liability, *see McNemar v. Disney Store, Inc.*, 91 F.3d 610, 618 (3d Cir.1996), this Court will address Plaintiff's ADA and NJLAD claims together. In order to qualify for protection against discrimination under the ADA, a plaintiff must show that he or she is a "qualified person with a disability who, with or without reasonable accommodation, can perform the essential functions of the job." 42 U.S.C. §§ 12111(8), 12112(a). Likewise, under the NJLAD, a plaintiff with a disability will be afforded protection from discrimination and unlawful employment practices "unless the nature and extent of the handicap reasonably precludes the performance of the particular employment." N.J.S.A. § 10:5–4.1. *See McNemar*, 91 F.3d at 618; *Morris v. Siemens*, 928 F.Supp. 486, 495 (D.N.J.1996); *Maher v. New Jersey Transit Rail Operations, Inc.*, 125 N.J. 455, 482, 593 A.2d 750 (1991). In other words, a plaintiff who is unable to perform the essential functions of his or her job cannot succeed in a claim under either the ADA or the NJLAD. *McNemar*, 91 F.3d at 618.

■ Defendants argue that Plaintiff's ADA and NJLAD claims must fail because, in light of the representations that Plaintiff made in seeking disability benefits, the doctrine of judicial estoppel bars Plaintiff from maintaining that he was able to perform the

---

4. In the First Count, Plaintiff alleges that Judge violated the ADA, and in the Second Count, that Judge violated the NJLAD. In the Third Count, Plaintiff maintains that Defendants, Martin E. Judge, Jr., Wendy Greenberg, and Sue Lukow aided and abetted Judge's violation of the NJLAD. Finally, in the Eighth Count, Plaintiff alleges that all of the Defendants illegally conspired with one another to violate Plaintiff's rights under both the ADA and the NJLAD.

essential functions of his job at the time he was discharged by Judge.

Judicial estoppel "is a judge-made doctrine that seeks to prevent a litigant from asserting a position inconsistent with one that [he or] she has previously asserted in the same or in a previous proceeding." *Ryan Operations G.P. v. Santiam–Midwest Lumber Co.,* 81 F.3d 355, 358 (3d Cir.1996). In other words, judicial estoppel is "designed to prevent litigants from playing fast and loose with the courts." *Id.* (citations omitted).

The Third Circuit has recently applied this doctrine in a case similar to this one, where a plaintiff had taken one position about his ability to work in order to obtain workers' compensation or disability benefits, and then sought to take the opposing position in an action for wrongful discharge. *See McNemar,* 91 F.3d at 616. In *McNemar,* the plaintiff had represented on his applications for Social Security Disability benefits and New Jersey disability benefits that he was totally and permanently disabled. Shortly thereafter, he instituted a law suit against his employer, alleging, *inter alia,* that his employer violated the ADA and the NJLAD when it terminated his employment.

In affirming the district court's grant of the employer's motion for summary judgment on the plaintiff's ADA and NJLAD claims, the Third Circuit agreed with the district court's determination that the plaintiff was estopped from now arguing that he was "qualified" under the ADA or NJLAD. *Id.* at. 619. In so holding, the court stated that:

> [c]learly [plaintiff] has asserted inconsistent positions regarding his ability to work. Before the Social Security Administration he and his physicians have certified under penalty of perjury that he was totally and permanently disabled. He made similar representations when he applied for New Jersey state disability benefits. And when applying for an exemption from making payments on his student loans, he represented to the State of Pennsylvania that he was unable to work and earn money. Thus, McNemar has represented to one federal agency and to the agencies of two different states that he was totally disabled

and unable to work— while now, in claiming relief under the American Disabilities Act, he states that he is a "qualified person with a disability who, with or without reasonable accommodation, can perform the essential functions of a job" as contemplated by 42 U.S.C. §§ 12111(8), 12112(a).

*Id.* at 618.

Indeed, numerous federal courts have concluded that an employee who represents on a benefits application that he is disabled is judicially estopped from arguing that he is qualified to perform the duties of the position involved. *See, e.q., August v. Offices Unlimited, Inc.,* 981 F.2d 576, 581–84 (1st Cir.1992) (summary judgment granted in favor of employer on plaintiff's claim for handicap discrimination under the Massachusetts antidiscrimination statute since plaintiff had made statements to disability insurer that he was totally disabled); *Beauford v. Father Flanagan's Boys' Home,* 831 F.2d 768, 770–71 (8th Cir.1987), *cert. denied,* 485 U.S. 938, 108 S.Ct. 1116, 99 L.Ed.2d 277 (1988) (holding that plaintiff could not be "otherwise qualified handicapped individual" under the Rehabilitation Act of 1973 where she had represented to disability insurance carrier that she was unable to work and received disability benefits); *Morris,* 928 F.Supp. at 495 (plaintiff estopped from claiming that termination was in violation of NJLAD where "summary judgment record [was] replete with certifications of [p]laintiff that she was unable to work and incapable of performing the duties of her job at the time she was discharged"); *Lewis v. Zilog, Inc.,* 908 F.Supp. 931 (N.D.Ga.1995); *Garcia–Paz v. Swift Textiles, Inc.,* 873 F.Supp. 547 (D.Kan. 1995); *Reigel v. Kaiser Foundation Health Plan of N.C.,* 859 F.Supp. 963, 967–70 (E.D.N.C.1994); *Kennedy v. Applause, Inc.,* 1994 WL 740765 (C.D.Cal.1994). *But see Smith v. Dovenmuehle Mortgage, Inc.,* 859 F.Supp. 1138, 1141–43 (N.D.Ill.1994) (holding that although plaintiff's representation of his disability in order to receive benefits may not estop him from asserting a handicap discrimination claim, such representations will be evidence used to determine whether plaintiff was, in fact, able to perform his job).

Likewise, in the instant action, this Court finds that the undisputed material facts contained in the summary judgment record reveal that Plaintiff claimed he was disabled at the time of his discharge and was unable to perform his job duties. The summary judgment record is replete with certifications by Plaintiff that he was unable to work and incapable of performing the duties of his job at the time he was discharged.[5] Indeed, Plaintiff's assertions of disability to the Social Security Administration are identical to those of the plaintiff in *McNemar*. *See McNemar*, 91 F.3d at 615 nn. 2,3. See *also Morris*, 928 F.Supp. at 495–497. In addition, the record does not reflect that Plaintiff ever renounced his statements on the forms indicating his total disability.

Plaintiff argues that his earlier statements that he could not work and that he was completely disabled are not inconsistent with his present claim that, at the time he was discharged, he could perform the duties of his job *with accommodation*. Plaintiff's *post hoc* attempts to qualify his assertions of complete disability are unconvincing in light of the unequivocal language of the assertions themselves. (*See* note 4, *supra*). Whether Plaintiff could have performed the essential functions of his job with accommodation at the time he was discharged is not relevant, since I find that the sworn representations made by Plaintiff in order to obtain disability benefits will preclude him from making such an argument in this case.

This Court finds that Plaintiff cannot be simultaneously unable to work and qualified to perform the duties of his position. Accordingly, I hold that, because the Plaintiff has been "playing fast and loose with the courts," *see Ryan*, 81 F.3d at 358, Plaintiff is judicially estopped from arguing that he was capable of performing his job at the time he was discharged. Thus, Plaintiff's ADA and NJLAD claims contained in the First, Second, Third and Eighth Counts of his complaint cannot succeed since Plaintiff cannot establish a key element of those claims—that his alleged handicap did not unreasonably hinder his job performance.

### B. Plaintiff's Breach of Contract Claim and Claim for Deprivation of Due Process

■ In the Fifth Count of his complaint, Plaintiff asserts that, by terminating his em-

---

5. The following undisputed evidence is contained within the summary judgment record:

· On October 27, 1993, Plaintiff applied for, and received disability benefits from the State of New Jersey. (Defendants' Appendix ("D.A."), Exs. H,I,J).

· In connection with Plaintiff's application for disability benefits from the State of New Jersey, Plaintiff stated in sworn certifications that he "was unable to work during the period for which benefits are claimed ..." (D.A., Ex.H), and that he has been "continuously disabled since the date of [the incident]." (D.A., Exs. I,J).

· On July 28, 1994, Plaintiff applied for Social Security Disability Insurance Benefits. In support of his application for such benefits, Plaintiff likewise certified that he "became unable to work because of [his] disabling condition on September 19, 1993," and that he "[is] still disabled." (D.A., Ex.K).

· On the application for Supplemental Security Income from the Social Security Administration, Plaintiff stated that he "[is] disabled," and that "[t]he disability began on September 19, 1993." (D.A., Ex.L).

· In support of his application for disability benefits from the New Jersey Department of Labor and the Social Security Administration, Plaintiff submitted:

(a) The report of Charles E. Wilkins, Jr., M.D., dated November 18, 1994, which stated that "[a]t the present time, this gentleman is [in] dire straits as far as the orthopedic conditions are concerned ... At the present time, he is dependent upon the use of crutches to bear weight and consequently, his prospects for employment are quite dim." (D.A., Ex.M); and,

(b) The report of Enrico A. Marcelli, D.O., dated October 6, 1994, stating that "[h]e has limited ambulation due to his lower extremity fractures. I don't believe these will improve; I believe his limitations are permanent." (D.A., Ex.M).

· Plaintiff's certified statement contained in a Social Security Administration Report, dated July 28, 1994, that his disability has left him unable to obtain a full or part-time position. (D.A., Ex.P).

· Plaintiff's sworn statements, made during the course of his deposition in a personal injury action brought by Plaintiff against various defendants relating to the incident of falling from the parking lot in New Orleans, Louisiana, that he has received benefits from the New Jersey Department of Labor, (D.A., Ex.R, T33–1), that he "will be permanently disabled," (D.A., Ex.R, T107–9).

ployment, Judge breached its contract of employment with the plaintiff. (Complaint, Fifth Count ¶ 2). Plaintiff does not cite in his complaint the source from which he contends such contractual rights derive. In his brief in opposition to Defendants' motion for summary judgment, however, Plaintiff maintains that there was a "verbal agreement made between the plaintiff and the defendant in early February of 1994, [that] the defendant was to make accommodation relative to the plaintiff's resumption of his employment duties." (Plaintiff's Brief at 15). Plaintiff further contends in his brief that "[t]he defendant's agreement to provide the plaintiff with accommodation amended and supplemented its original contract of employment with the plaintiff and a factual issue exists as to the scope and duties under the said employment contract as amended." *Id.*

■ Under New Jersey law, an employment relationship is terminable at-will unless an agreement exists between the employer and the employee that provides otherwise. *See Bernard v. IMI Sys., Inc.,* 131 N.J. 91, 105–06, 618 A.2d 338 (1993). Such an agreement between the employer and the employee may be based upon an oral promise, so long as it is a "definitive, established companywide employer policy ... and the employer's statements constitute 'an accurate representation of policy' which the employer was authorized to make." *Gilbert v. Durand Glass Mfg. Co.,* 258 N.J.Super. 320, 330, 609 A.2d 517 (App.Div.1992) (citations omitted).

Although the law provides that an employer's oral promise may modify what would otherwise be an employment-at-will relationship, Plaintiff has failed to identify any oral promise made by Judge or any of its representatives regarding his employment which would alter his at-will status.[6] Instead, Plaintiff merely alleges that there was an oral agreement between Judge and him relating to certain "accommodations" Judge would make upon Plaintiff's return to work. Nowhere does Plaintiff allege that Judge made any oral promise which would alter his otherwise at-will employment status.

Moreover, in his own certification, Plaintiff concedes that he and Judge never reached any agreement regarding any "accommodations." Plaintiff testifies in his certification as follows:

13. In approximately early February 1994, I was released by my physician to return to work from home with accommodation. Thereafter, I contacted Martin Judge, Frank Summers and Wendy Greenberg, all of Judge, regarding my return to employment as a full-time Network Engineer and a suggested accommodation which would allow me to complete all of the essential functions of same from my house.

14. Pursuant to their suggestion, on February 8, 1994, I submitted a comprehensive proposal ... detailing how I could conduct my essential job functions from home at great cost-savings and other advantages to Judge. Despite continued follow-up contact with Judge management during the next several weeks, *I never received a specific response to same.*

(Erit Cert. ¶¶ 13–14, Plaintiff's Appendix, Ex.A) (emphasis supplied). Thus, Plaintiff's own sworn statements reveal that there was never, in fact, any oral agreement made between Judge and him regarding accommodations or any other aspect of his employment. Accordingly, since the Plaintiff cannot demonstrate that an oral agreement existed between Judge and him which would alter his otherwise at-will status, Plaintiff's claim against Judge for breach of contract cannot succeed.

■ Plaintiff also claims in his complaint that, by terminating his employment, Judge deprived him of his right to procedural due process. (Complaint, Fourth Count). Plaintiff does not state in his complaint the source from which he contends his right to procedural due process derives in this case. If the source is the United States Constitution, Plaintiff's due process claim fails for the simple reason that the Defendants are not state actors. *See West v. Atkins,* 487 U.S. 42, 48,

---

**6.** Indeed, Judge's offer of employment to Plaintiff stated that, his employment "agreement may be terminated by either party at any time." (Ex.B).

108 S.Ct. 2250, 2254–55, 101 L.Ed.2d 40 (1988); *Shaw v. Strackhouse*, 920 F.2d 1135, 1142 (3d Cir.1990).

### C. Plaintiff's Claims for Conversion and Violation of New Jersey's Consumer Fraud Act

 In the Sixth Count of his complaint, Plaintiff alleges that Judge "converted" Plaintiff's property rights in his professional certification as a Novell Certified Network Engineer to its own use, enjoyment and benefit by continuing to use Plaintiff's certification to its advantage after Plaintiff was no longer employed by Judge. (Complaint, Sixth Count ¶¶ 2–3). In order to succeed on a claim for conversion, a plaintiff must establish that he was "deprived of his property by the act of another assuming an unauthorized dominion and control over it." *Charles Bloom & Co., v. Echo Jewelers*, 279 N.J.Super. 372, 381, 652 A.2d 1238 (App.Div.1995). However, even assuming Judge did improperly use Plaintiff's certification to its advantage after Plaintiff was no longer employed by Judge, Plaintiff does not allege that he was ever deprived of the ability to use his own certification at any time. Accordingly, Plaintiff's conversion claim is wholly without merit and must fail.

Plaintiff's claim in the Seventh Count of his complaint that Judge, by improperly using Plaintiff's Novell certification to its advantage, violated the New Jersey Consumer Fraud Act, N.J.S.A. § 56:8–1, *et seq.*, is equally frivolous. In order for a private individual to bring an action under New Jersey's Consumer Fraud Act, that individual first, must be a consumer, and second, must have been misled in some way. *See Cox v. Sears Roebuck & Co.*, 138 N.J. 2, 647 A.2d 454 (1994); *Knapp v. Potamkin Motors Corp.*, 253 N.J.Super. 502, 602 A.2d 302 (Law Div.1991). Since Plaintiff neither alleges that he is a consumer, nor contends that he, himself, was misled in any way by Judge, Plaintiff's New Jersey Consumer Fraud Act claim must also fail as a matter of law.[7]

### D. Plaintiff's Claims for Intentional and Negligent Infliction of Emotional Distress

 Plaintiff's claim for the intentional infliction of emotional distress contained in the Ninth Count of his complaint is also without legal support. A successful claim for intentional infliction of emotional distress requires a plaintiff to establish that defendant's conduct was "[s]o outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Buckley v. Trenton Saving Fund Soc.*, 111 N.J. 355, 365–66, 544 A.2d 857 (1988); *see also Roxanne Gennari v. Weichert Co. Realtors*, 288 N.J.Super. 504, 672 A.2d 1190 (App.Div.1996). The emotional distress suffered by the plaintiff must be "so severe that no reasonable man could be expected to endure it." *Buckley v. Trenton Saving Fund Soc.*, 111 N.J. at 365–66, 544 A.2d 857.

Plaintiff has not only failed to demonstrate that Judge's behavior under these circumstances reached the requisite level of "outrageousness," or that he has suffered exceptionally severe emotional distress, he has also failed to present evidence of any damages resulting from Judge's conduct. Accordingly, Plaintiff cannot succeed in his claim for intentional infliction of emotional distress.

 Plaintiff's claim for negligent infliction of emotional distress also cannot succeed. Negligent infliction of emotional distress requires the establishment of the following elements:

(1) the death or serious physical injury of another caused by defendant's negligence;

(2) a marital or intimate familial relationship between plaintiff and the injured person;

(3) observation of the death or injury at the scene; and

(4) severe emotional distress.

*Portee v. Jaffee*, 84 N.J. 88, 101, 417 A.2d 521 (1980); *Trisuzzi v. Tabatchnik*, 285 N.J.Super. 15, 25, 666 A.2d 543 (App.Div.1995).

---

7. For the same reasons, Plaintiff's claim that the Defendants conspired to violate Plaintiff's rights under the New Jersey Consumer Fraud Act, con-tained in the Eighth Count of his complaint, must fail as a matter of law, as well.

Plaintiff has not alleged or presented any facts to support any one of the four elements of this state law cause of action, and therefore, his claim for the negligent infliction of emotional distress in the Tenth Count also must fail as a matter of law.

For the reasons set forth above, this Court will grant Defendants' motion for summary judgment. The Court will enter an appropriate order.

## ORDER

This matter having come before the Court on Defendants' motion for summary judgment on Plaintiff's complaint pursuant to Fed.R.Civ.P. 56, John J. Markwardt, Esq., of Markwardt & Sander, P.A., appearing on behalf of the Plaintiff, and Michael P. Madden, Esq., and Patrick J. Madden, Esq., of Madden, Madden & Del Duca, P.A., A Professional Corporation, appearing on behalf of the Defendants; and,

The Court having considered the parties' submissions filed in support of, and in opposition to the motion;

For the reasons set forth in this Court's Opinion filed with this Order;

IT IS HEREBY ORDERED on this 18th day of April, 1997, that Defendants' motion for summary judgment is granted.